# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| VANDERBILT MORTGAGE AND FINANCE, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CA 14-00259-KD-C |
| | : | |
| STEPHEN D. CROSBY and KAREN CROSBY, | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

This matter is before the Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), on the Defendants' motion to dismiss (doc. 11), the Plaintiff's response (doc. 14), and the Defendants' reply (doc. 15). After consideration of the Defendants' motion and the briefs of the parties, it is the Magistrate Judge's **RECOMMENDATION** that the Defendants' motion to dismiss (doc. 11) be **DENIED** as discussed below.

## Background

The Plaintiff, Vanderbilt Mortgage and Finance, Inc., brings this breach of contract action against the Defendants, Stephen and Karen Crosby, arising out of the Defendants' alleged failure to pay the installment payments on a retail installment contract executed in connection with the purchase of a mobile home. (Doc. 5, ¶¶ 6-17.)[1] In Count I of the First Amended Complaint, the Plaintiff demands judgment against the Defendants in the amount of $76,197.40—the sum of $66,258.61 in principal and interest owing under the contract and $9,938.79 in attorneys' fees that the Plaintiff claims are

---

[1] The Defendants purchased the mobile home from CMH Homes, Inc., ("CMH Homes") d/b/a Clayton Homes Northport, AL, under a retail installment contract, (doc. 5, ¶ 6), and CMH Homes "transferred its interest in the [c]ontract to Plaintiff," (*id.*, ¶ 7).

owed under the terms of the contract. (*Id.* at 3-4.) In Count II, the Plaintiff seeks to take possession of the mobile home—the collateral securing the contract. (*Id.* at 4-5.)

The Defendants filed a motion to dismiss the First Amended Complaint on the grounds that this Court does not have subject matter jurisdiction over this case because the amount in controversy does not exceed the jurisdictional threshold. (Doc. 11.) Alternatively, the Defendants argued that this case should be dismissed because this Court is an inconvenient forum. (*Id.*, ¶ 3.) The Plaintiff filed a response arguing that it has met the amount in controversy requirement and that the Defendants have not substantiated their claims regarding inconvenience. (Doc. 14.) The Plaintiff further argued that it would incur prejudice and inconvenience if it were forced to bring this case in state court—the alternative forum suggested by the Defendants. (*Id.* at 7-8.) The Defendants subsequently filed a reply arguing that the common law doctrine of *forum non conveniens* supports dismissal. (Doc. 15.)

## Discussion

I. **Subject Matter Jurisdiction**

The Plaintiff invokes the subject matter jurisdiction of this Court under 28 U.S.C. § 1332. (Doc. 5, ¶ 4.)[2] Pursuant to section 1332 this Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332. Here, there is no dispute between the parties that the parties are diverse, (doc. 11 at 1), and the undersigned agrees that the Plaintiff has sufficiently pled diversity of

---

[2] "[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002) (citing *Scoggins v. Pollack*, 727 F.2d 1025, 1026 (11th Cir. 1984)).

citizenship.³ However, as stated above, the primary issue before the Court is whether the requisite amount in controversy has been met. (Doc. 11).

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S. Ct. 586, 82 L. Ed. 845 (1938) (internal footnotes omitted); *accord Siren, Inc. v. Estes Express Lines*, 249 F.3d 1268, 1274 n.6 (11th Cir. 2001) (citing *St. Paul*, 303 U.S. at 288); *Jones v. Landry*, 387 F.2d 102, 104 (5th Cir. 1967) (citing *St. Paul*, 303 U.S. at 288); *see also id.* ("The strictness with which the 'legal certainty' test is applied by the Supreme Court is illustrated by the case of *Bell v. Preferred Life Assur. Society*, [ ] 320 U.S. 238, 64 S. Ct. 5, 88 L. Ed. 15 [(1943)]. There, the

---

³ In the original complaint (doc. 1), the Plaintiff failed to plead sufficient facts regarding diversity of citizenship, (*see* doc. 1, ¶¶ 1-3), and United States District Judge Kristi K. DuBose ordered the Plaintiff to file "an amended complaint that sufficiently alleges diversity jurisdiction," (doc. 4; *see id.* ("Specifically, the Plaintiff alleges only the state of residence (Alabama) of the two natural person defendants. . . . However, the Eleventh Circuit has repeatedly stressed that '[c]itizenship, not residence, is the key fact that **must be alleged** . . . to establish diversity for a natural person.' . . . 'Citizenship is equivalent to "domicile" for purposes of diversity jurisdiction.'" (citing *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994); *McCormick*, 293 F.3d at 1257-58) (other citations omitted))). The Plaintiff cured the deficiencies in the original complaint by filing the First Amended Complaint (doc. 5) in which it alleged that the Defendants are "domiciled resident[s] of Choctaw County, Alabama," and, thus, "citizen[s] of the State of Alabama." (*Id.*, ¶¶ 2-3.) Furthermore, the Plaintiff alleges that the "Plaintiff is a citizen of the state of Tennessee, as it is a corporation organized and existing under the laws of the State of Tennessee with its principal place of business in Maryville, Tennessee." (*Id.*, ¶ 1 (citing 28 U.S.C. 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.")).)

complaint alleged that the plaintiff had been induced to purchase a certificate of insurance through fraudulent misrepresentations by the defendant's agent as to its value, and claimed $200,000.00 as actual and punitive damages. The record showed that the plaintiff had paid $202.35 on the certificate and that the certificate, upon death or final surrender, had a maximum potential value of $1,000.00. Nonetheless, the court held that it was not apparent to a legal certainty that the plaintiff could not recover in addition sufficient punitive damages to make up the then requisite $3,000.00, and that it was no answer to contend that a verdict, if rendered for that amount, would be excessive and set aside for that reason.").

The Plaintiff states in the First Amended Complaint that it claims contractual damages in the amount of $76,197.40. (Doc. 5 at 4.) More specifically, the Plaintiff alleges that, under the financing agreement for the purchase of the Defendants' mobile home, the Defendants promised to pay $61,380.97 in principal, plus interest accruing at a rate of 11.20% per year. (Doc. 5, ¶ 6; doc. 5-1 at 3.) The Plaintiff alleges that the Defendants defaulted on the agreement, (doc. 5, ¶ 10), and that, as of May 9, 2014, the balance due under the contract is $66,258.61,[4] (*id.*, ¶ 11). Furthermore, the Plaintiff

---

[4] The interest claimed by the Plaintiff here is properly included for purposes of determining the amount in controversy because it is not a penalty for a delay in payment, but a critical part of the financing agreement for the purchase of the mobile home. *See Brainin v. Melikian*, 396 F.2d 153, 154-55 (3d Cir. 1968) ("[T]he interest claimed in the instant case involves not a charge for delay in the payment of money, but interest exacted as the agreed upon price for the hire of money insofar as it claims interest at the rate specified in the note during the period before maturity." (internal quotation marks and ellipses omitted)); *id.* (concluding that the claimed interest was includable in the jurisdictional amount because it was "an integral part of the total obligation" and "not merely incidental" (citing *Brown v. Webster*, 156 U.S. 328, 330, 15 S. Ct. 377, 39 L. Ed. 440 (1895))); *see also Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 461 (2d Cir. 1994) ("[W]here . . . interest is owed as part of an underlying contractual obligation, unpaid interest becomes part of the principal for jurisdictional purposes." (citing *Edwards v. Bates County*, 163 U.S. 269, 16 S. Ct. 967, 41 L. Ed. 155 (1896))); *GreatAmerica Leasing Corp. v. Rohr-Tippe Motors, Inc.*, 387 F. Supp. 2d 992, 995 (N.D. Iowa 2005) (same) (citing *Brown*, 156 U.S. at 330; *Transaero*, 24 F.3d at 461). Under the contract, the parties agreed that once the contract was executed the Seller would begin applying a monthly finance charge at an annual rate of 11.20%. (Doc. 5-1 at 2.) The Defendants agreed that, if they timely submitted all payments pursuant to

alleges that, under the contract, it is entitled to reasonable attorneys' fees in the amount of $9,938.79. (*Id.*, ¶ 12; *see* doc. 5-1 at 7 ("Buyer also agrees to pay Seller's expenses for . . . reasonable attorney's fees not to exceed 15% of Buyer's Unpaid Balance after referral to an attorney who is not a salaried employee of the Seller.").)

The Defendants argue that there has been no showing that $9,938.79 is a reasonable attorney's fee in this matter. (Doc. 11, ¶ 2.)[5] However, because $9,938.79 in fees does not exceed 15% of the unpaid balance allegedly owed by the Defendants, it does not clearly fall outside the range of recoverable fees under the contract of the parties. (*See* doc. 5-1 at 7.) Therefore, it is not "apparent, to a legal certainty, that the [P]laintiff cannot recover" $9,938.79 in fees. *See St. Paul*, 303 U.S. at 288. The Plaintiff's claim for attorneys' fees appears to have been made in good faith and, thus, for purposes of determining the amount in controversy, the $9,938.79 in claimed fees should be added to the $66,258.61 in principal and interest to reach a total of $76,197.40.[6]

The Defendants also argue that the amount in controversy does not reach the

---

the payment schedule in the contract, they would ultimately pay $100,604.63 in finance charges after 240 months. (Doc. 5-1 at 3.) Thus, the interest or finance charges that accrued were "an integral part of the [Defendants'] total obligation," and those funds should be aggregated with the principal when determining the amount in controversy. *See Brainin*, 396 F.2d at 155; *see also Roberts v. Chandaleur Homes, Inc.*, 237 F. Supp. 2d 696, 697-98 (S.D. Miss. 2002) (aggregating the principal with the interest payments required under a retail installment contract for the purchase of a mobile home when determining the amount in controversy in an action seeking rescission of the sale of a mobile home).

[5] The Defendants provide no legal support for their contention that the Plaintiff cannot recover $9,938.79 in fees. (*See* doc. 11, ¶ 2.)

[6] Attorney's fees can be counted towards the amount in controversy in this case because they are provided for by the parties' contract. *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808 n.4 (11th Cir. 2003) ("The general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract." (citing *Graham v. Henegar*, 640 F.2d 732, 736 (5th Cir. 1981)); *Premier Indus. Corp. v. Texas Indus. Fastener Co.*, 450 F.2d 444, 447 (5th Cir. 1971) (concluding that, when determining the amount in controversy in an action to enforce a settlement agreement, the attorneys' fees provided for by the settlement agreement should be included).

jurisdictional threshold because the amount demanded by the Plaintiff—$76,197.40—must be offset by the amount of funds obtained by the sale of the mobile home at issue. (Doc. 11 at 3-4.) The Plaintiff's undeveloped and unsupported argument is misleading. This is not a case where a debt collector has filed an action to obtain a deficiency judgment of less than $75,000.00 after selling collateral that secured the debt. Here, the Defendants allegedly owe the Plaintiff $76,197.40, and the Plaintiff brings this action to recover that entire amount. (Doc. 5 at 2-4.) The Defendants have presented no information that the mobile home has already been seized and sold, and there is certainly no indication that such events had occurred at the time this action commenced.[7] While it may be true that, as a result of these proceedings, the Plaintiff could ultimately take possession of the Defendants' mobile home, sell it, and use the funds obtained at the sale to contribute towards its recovery, such events, which as of now are merely a possibility, do not impact the Court's determination regarding the amount in controversy for purposes of establishing diversity jurisdiction. *See St. Paul*, 303 U.S. at 288 ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."); *Commercial Credit Corp. v. Lane*, 466 F. Supp. 1326, 1329-30 (M.D. Fla. 1979) ("The accepted rule is that the amount in controversy for federal diversity jurisdiction purposes is determined [a]s of the time the action is commenced, and subsequent actions cannot divest the court of jurisdiction once it has been acquired. . . . When this action was filed . . . there was approximately $14,000.00 still owing on the contracts upon which plaintiff's suit was based. Several months after commencement of the suit, plaintiff recovered one-half of

---

[7] The Plaintiff alleges in the First Amended Complaint that "Plaintiff has made demand to Defendants for possession of the Collateral but the Defendants have failed or refused to deliver possession to Plaintiff." (Doc. 5, ¶ 16.)

this balance by sales of the repossessed mobile homes. Since, at the time the suit was filed, plaintiff, in good faith, alleged damages in excess of the $10,000.00 jurisdictional amount, these subsequent acts cannot divest this Court of subject matter jurisdiction.").

The Defendants provide no legal support for their argument that the amount in controversy in this case is calculated by accounting for the value of the mobile home as determined at a hypothetical sale that may or may not occur. (*See* doc. 5 at 3-4.)[8] The value of the Defendants' mobile home—the collateral securing the debt at issue in this case—does not affect the amount in controversy. *See Johns v. Dufner Catering Ctr.*, 977 F.2d 589, 1992 WL 245952, at *1 n.1 (9th Cir. Sept. 30, 1992) (unpublished opinion) ("[The plaintiff] alleges that the amount in controversy exceeds [the jurisdictional threshold] because the note was secured by property valued at $135,000. This contention lacks merit[] because the value of the property used as collateral for the loan did not [a]ffect the actual amount in controversy."). If the Plaintiff succeeds in its claim as stated in the First Amended Complaint, it will be entitled to recover $76,197.40, regardless of whether those funds are recovered entirely in the form of a direct payment from the Defendants or in the form of a direct payment in combination with the sale of the Defendants' mobile home.[9] Thus, it does not "appear to a legal certainty that the

---

[8] The Defendants cite to sections in the Alabama Code governing the sale of collateral, (doc. 11 at 3), but provide no legal authority stating how the value of collateral affects the amount in controversy, (*see id.*). The undersigned also notes that, in their reply, the Defendants cite to *Roe v. Michelin N. Amer., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010), and *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007), for general propositions regarding the standard applied by the Court when determining the amount in controversy, (*see* doc. 15 at 2 (citing *Roe* and *Lowery*)). The Defendants' reliance on *Roe* and *Lowery* is misplaced because those cases address the amount in controversy requirement within the context of matters that have been removed from state court where the plaintiff has made an unspecified damages demand. *See Roe*, 613 F.3d at 1061; *Lowery*, 483 F.3d at 1213-15. Here, of course, the Plaintiff filed this matter in federal court and demanded a precise damages figure.

[9] For example, if the Plaintiff ultimately obtains $10,000.00 from the sale of the mobile home, after fees and costs associated with the sale, the Plaintiff will be entitled to recover

7

claim is really for less than the jurisdictional amount." *See St. Paul*, 303 U.S. at 288. Accordingly, because the amount in controversy requirement has been met and this Court has diversity jurisdiction over this matter, it is **RECOMMENDED** that the Court **DENY** the Defendants' motion to dismiss for lack of subject matter jurisdiction.

II.   *Forum Non Conveniens*

The Defendants also present the alternative argument that this matter should be dismissed because this Court is an inconvenient forum. (Doc. 11 at 4; doc. 15 at 2-5.) The Defendants state that this case should proceed, instead, in the Circuit Court of Choctaw County, Alabama. (Doc. 11 at 4; doc. 15 at 2-5.) As a preliminary matter, the undersigned notes that, in the Defendants' motion to dismiss, they included a single paragraph at the end of their motion suggesting that this matter should be dismissed due to the inconvenience of this forum, and they failed to provide any legal authority or articulate any legal theory under which this Court should grant such relief. (*See* doc. 11, ¶ 3.) Generally, this Court is reluctant to give much consideration to undeveloped arguments such as the one asserted by the Defendants in the final paragraph of their motion to dismiss. *See Cont'l Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp. 2d 1296, 1302 n.6 (S.D. Ala. 2012) ("Movants not having fleshed out this argument or lent it any substance, this Court will not undertake to develop it on their behalf."). However, the Defendants expound on their argument in their reply brief where they state that this matter should be dismissed under the common law doctrine of *forum non conveniens*.

---

the remaining $66,197.40 owed by the Defendants for a total recovery of $76,197.40. *See* Ala. Code § 7-9A-608(a)(4). If, however, the Plaintiff obtains $100,000.00 from the sale of the mobile home, the Plaintiff will be required to reimburse the Defendants for the $23,802.60 surplus, *see id.*, and will recover $76,197.40. Furthermore, if the mobile home is not seized and sold in conjunction with these proceedings, the Plaintiff will still be entitled to recover $76,197.40 from the Defendants.

(Doc. 15 at 2-3.)[10] Because the Defendants have developed their argument, the undersigned considers it herein.

> A federal court has discretion to dismiss a case on the ground of *forum non conveniens* when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems. Dismissal for *forum non conveniens* reflects a court's assessment of a range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality. We have characterized *forum non conveniens* as, essentially, a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined.

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007) (citations, internal quotation marks, ellipses and brackets omitted). Additionally, to succeed on a motion to dismiss on the grounds of *forum non conveniens* the movant must establish that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011) (quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001)). "A defendant invoking forum non conveniens 'bears a heavy burden in opposing the plaintiff's chosen forum.' . . . A Plaintiff's choice

---

[10] The Defendants state that they are not invoking the federal statute governing transfer of cases because that statute "does not allow for transfer to state court." (Doc. 15 at 2.) The statute to which the Defendants refer is 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Section 1404(a) does not apply in cases where the purportedly more convenient forum is not a United States district court." *Capital Currency Exchange, N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 607 (2d Cir. 1998); *accord Doran v. City of Clearwater*, 814 F. Supp. 1077, 1078 (M.D. Fla. 1993) ("[Section] 1404(a) only provides for transfer between districts or divisions of federal district court."). Therefore, the Defendants are correct that this matter cannot be transferred to the Circuit Court of Choctaw County pursuant to section 1404(a).

9

of forum is entitled to deference, and there is a presumption in favor of a plaintiff's choice of forum, particularly where the plaintiffs are citizens of the United States." *Wilson v. Island Seas Invs. Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009) (citing *Sinochem*, 549 U.S. at 430; *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1100-02 (11th Cir. 2004)).

Here, the Defendants argue that the more convenient forum is in the Circuit Court of Choctaw County, Alabama. (Doc. 15 at 3.) However, the common law doctrine of *forum non conveniens* generally applies only when the proposed alternative forum is in a foreign country. *See Sinochem*, 549 U.S. at 430 ("The common-law doctrine of *forum non conveniens* 'has continuing application [in federal courts] only in cases where the alternative forum is abroad,' . . . and perhaps in rare instances where a state or territorial court serves litigational convenience best." (citing *Amer. Dredging Co. v. Miller*, 510 U.S. 443, 447-48, 114 S. Ct. 981, 127 L. Ed. 2d 285 (1994))); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996) ("[T]o the extent we have continued to recognize that federal courts have the power to dismiss damages actions under the common-law *forum non conveniens* doctrine, we have done so only in 'cases where the alternative forum is abroad.'" (citations omitted)); *McLane v. Marriott Int'l, Inc.*, 547 Fed. App'x 950, 953 (11th Cir. Dec. 11, 2013) (unpublished opinion) ("Under the doctrine of *forum non conveniens*, 'a federal district court may dismiss an action on the ground that a court *abroad* is the more appropriate and convenient forum for adjudicating the controversy." (citing *Sinochem*, 549 U.S. at 425) (emphasis added)); *Genesis Ins. Co. v. Alfi*, 425 F. Supp. 2d 876, 895 (S.D. Ohio 2006) ("The instant case does not involve the transfer to an alternative forum abroad; rather, the defendants seek to transfer this case to California. Accordingly, the motion to dismiss based on forum non conveniens will be denied."); *Doran*, 814 F. Supp. at 1078 ("The application of the

doctrine of forum non conveniens to dismiss this case or to remand to State court would be improper."). The Defendants provide no authority supporting dismissal so as to permit the parties to proceed with this matter in another domestic venue.[11] (*See* doc. 15 at 2-5.)

The Defendants assert that it "is obvious" that litigating this matter in this Court is oppressive and vexatious because they are parties to a related matter pending in state court in Choctaw County. (Doc. 15 at 3.) The undersigned disagrees that the oppression and vexation is obvious. The Defendants do not provide any explanation as to the nature of the related state court proceeding other than stating that it involves the mobile home at issue in this case.[12] [13] (*See* doc. 15 at 2-5.) The Defendants cannot establish that this forum is oppressive simply because they are litigating a related state court matter. *See Henderson v. Floorgraphics, Inc.*, 153 F. Supp. 2d 133, 138 (D. Conn. 2001) (denying motion to dismiss pursuant to the doctrine of *forum non conveniens* despite the fact that the plaintiff and defendant were both parties to a related action pending in state court).

Moreover, the Defendants provide no evidence establishing the cost or

---

[11] The only two cases cited by the Defendants in support of their *forum non conveniens* argument involve alternative fora in foreign countries. *See Wilson*, 590 F.3d at 1269-72; *Membreno v. Costa Crociere S.p.A.*, 425 F.3d 932, 937 (11th Cir. 2005).

[12] The Plaintiff states that the state court action "involves issues of alleged breach of warranties and manufacturing defects against the seller of the [mobile] home . . . which has nothing to do with [the Plaintiff's] rights to payment and possession under the contract." (Doc. 14 at 8.) The Plaintiff further states that it is not a party to the related state court action and that it will be prejudiced by being forced to litigate in the Circuit Court of Choctaw County. (Doc. 14 at 7-8.)

[13] The Defendants assert, without any explanation or support, that litigating the two cases in different courts "has the potential for inconsistent rulings or verdicts." (Doc. 11, ¶ 3.) Because the Defendants have not provided any details regarding the state court matter, (*see* doc. 11, ¶ 3; doc. 15 at 3-4), or otherwise refuted the Plaintiff's statements that the legal issues in the two cases are entirely distinct, (*see* doc. 14 at 8), the undersigned cannot give significant weight to the Defendants' bare assertion regarding inconsistent rulings or verdicts.

11

inconvenience borne by them should they be required to proceed in this Court. (*See* doc. 15 at 2-5.) The Defendants reside in Choctaw County, Alabama, (doc. 5, ¶¶ 2-3), which lies within the Southern District of Alabama. The undersigned simply cannot conclude that it is oppressive and vexatious for the Defendants to litigate in the federal district within which they live. *See Delivermed Holdings, LLC v. Schaltenbrand*, Nos. 10-cv-684-JPG-DGW, 10-cv-685-JPG-DGW, 2011 WL 2134343, at *11 (S.D. Ill. May 27, 2011) ("[T]he Court is hard-pressed to see how litigating this case here, as opposed to in a state court located *within this judicial district*, could be appreciably more burdensome." (emphasis in original)). In the cases upon which the Defendants rely, the movants were foreign entities that argued that it was oppressive for them to litigate in the United States. *See Wilson*, 590 F.3d at 1269-72 (involving a Bahamian company that argued that it was inconvenient for it to litigate the matter in the United States and that the matter should be reinstated in the Bahamas)[14]; *Membreno*, 425 F.3d at 937 (involving an Italian corporation and a Netherlands Antilles company that argued that litigating the matter in the United States was inconvenient and that alternative fora existed in Italy, the Netherlands Antilles and Honduras). The Defendants have not overcome the presumption in favor of the Plaintiff's chosen forum, and they have made no showing that this is one of those "rare instances" where "litigational convenience" warrants dismissal of an action in federal district court in favor of state court. *See Sinochem*, 549 U.S. at 430. Accordingly, it is **RECOMMENDED** that the Court **DENY** the Defendants' motion to dismiss on the grounds of *forum non conveniens*.

## Conclusion

For the reasons stated herein, the Magistrate Judge **RECOMMENDS** that the

---

[14] In *Wilson* the Eleventh Circuit determined that the district court abused its discretion by granting the defendant's motion to dismiss on the grounds of *forum non conveniens*. *See Wilson*, 590 F.3d at 1273.

Defendants' motion to dismiss (doc. 11) be **DENIED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 23rd day of September 2014.

                s/WILLIAM E. CASSADY
                **UNITED STATES MAGISTRATE JUDGE**