IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VANDERBILT MORTGAGE AND FINANCE, INC., <br>     Plaintiff, <br><br> v. <br><br> STEPHEN D. CROSBY, *et al.*, <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )    CIVIL ACTION NO. 14-00259-KD-C <br> ) <br> ) |

**ORDER**

This matter is before the Court on Plaintiff Vanderbilt Mortgage and Finance, Inc.'s Motion to Confirm Foreclosure Sale and for Entry of Final Judgment. (Doc. 47).

In October 2012, the Defendants ("the Crosbys") purchased a mobile home from CMH Homes, Inc., d/b/a Clayton Homes Northport, AL, and executed a manufactured home retail installment contract and disclosure statement (the contract). (Doc. 1-1; Doc. 35-1 at 2 (Aff. Ridge); Doc. 29 (amended)). In the contract, the Crobsys promised to repay the principal sum of $61,380.97 at 11.20% interest in 240 monthly installments of $765.09. (*Id*.) As part of the contract, CMH and the Crosbys assigned CMH's interests to Plaintiff Vanderbilt Mortgage and Finance, Inc. (VMF). (Doc. 1-1 at 11; Doc. 35-1 at 2 (Aff. Ridge)). In conjunction with the purchase of the mobile home and as security for that contract, the Crosbys granted VMF a $64,535.73 mortgage on real property (5 acres) in Toxey, Alabama. (Doc. 1-2).[1] Ultimately, the Crosbys defaulted under the contract.

On March 5, 2015, the Court granted VMF's motion for summary judgment as to judicial foreclosure of the land located in Toxey, Alabama. (Doc. 46). As explained in more detail in the

---

[1] VMF's security interest was documented on the Certificate of Title, as the lienholder. (Doc. 1-2).

Court's previous order, VMF was entitled to sell both the property and the mobile home together through the foreclosure sale. (Doc. 46).

Prior to the foreclosure sale, VMF published a Notice of Mortgage Foreclosure Sale in the *Choctaw-Sun Advocate* once a week for three successive weeks. (Docs. 47 at 2 and 47-1). VMF also provided written notice of the foreclosure sale to the Defendants. (Doc. 47 at 3). VMF asserts that on May 14, 2015, "[t]he foreclosure sale was conducted in accordance with the requirements of the mortgage, with the requirements of the Court's order of March 5, 2015, and with the requirements of Alabama law." (Doc. 47 at 3).[2] VMF represents to the Court that it made the only and highest bid for the property at the foreclosure sale in the amount of $73,767.07, and that the auctioneer declared VMF the successful bidder.

Courts have broad discretion in determining whether to confirm or refuse to confirm a judicial sale. *See, e.g., Citibank, N.A. v. Data Lease Financial Corp.,* 645 F.2d 333 (5th Cir.1981); *Wood River Dev. v. Armbrester,* 547 So.2d 844, 848 (Ala.1989); *Lynn v. Dodge,* 727 So.2d 89 (Ala.Civ.App.1997); *Davis v. Battle,* 675 So.2d 460 (Ala.Civ.App.1996). Such determinations ordinarily will not be disturbed except for an abuse of discretion, recognizing the strong public policy in favor of the finality of judicial sales. *Id.* Generally courts have adopted the policy that confirmation will not be refused except for substantial reasons, and that in the absence of fraud or misconduct, the highest bidder will ordinarily be accepted as the purchaser of the property offered for sale. *See, e.g., First Nat. Bank of Jefferson Parish v. M/V Lightning Power,* 776 F.2d 1258 (5th Cir.1985); *Harduval v. Merchants' & Mechanics' Trust & Savings Bank,* 86 So. 52 (Ala.1920) (finding that a purchaser at judicial sale is entitled to have the sale confirmed by the court in the absence of irregularity, misconduct, fraud, mistake, or gross inadequacy of price amounting in itself to fraud). There is no evidence of record of irregularity,

---

[2] The Court has previously determined that Alabama law applies. (Doc. 43 at 6).

misconduct, fraud, mistake or gross inadequacy of price amounting in itself to fraud in the foreclosure sale. Accordingly, VMF's motion to confirm the foreclosure sale is **GRANTED IN PART**. The foreclosure sale is **CONFIRMED**.

In addition to confirmation of the sale, VMF also moves the Court to: 1) Award a deficiency balance of $508.11; 2.) Award attorney's fees in the amount of $9,938.79; 3.) Tax costs of the actions against the Defendants; and 4.) Enter a final judgment on behalf of VMF. The Court addresses each in turn.

### A. Deficiency

On February 11, 2015, this Court awarded VMF a judgment in the amount of $70,416.88, which consisted of the following: $62,719.17 in unpaid principal; $6,747.14 in accrued unpaid interest as of December 11, 2014; $388.58 in late charges; and $561.79 in escrow items. (Doc. 43 at 7). Since then, VMF asserts that an additional $2,964.50 in accrued unpaid interest has incurred and that it is due $882.00 in costs associated with publication of the foreclosure notice. With the additional interest and publication costs included, the amount outstanding totals $74,275.18. Defendants are due credit in the amount of $73,767.07 based on the amount VMF paid for the motor home at the foreclosure sale. This leaves a deficiency balance of $508.11.

The Eleventh Circuit has held, "If the sales price at a judicial sale does not fully satisfy a judgment creditor's judgment…the creditor can generally seek a deficiency judgment to recover the balance of the debt. Although courts today generally calculate deficiency judgments as the difference between the total debt and the property's fair market value, they also generally presume that the foreclosure sales price equals the property's fair market value." *Redus Florida Commercial, LLC v. Coll. Station Retail Ctr., LLC*, 777 F.3d 1187, 1193 (11th Cir. 2014)(internal citations omitted).

The mortgage states, "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this section 22 [Acceleration; Remedies], including, but not limited to reasonable attorneys' fees and costs of title evidence." (Doc. 35-4 at 15). Upon consideration, the Court agrees that VMF is owed a deficiency balance of $508.11.

### B.   Attorney's Fees and Costs

VMF has requested $9,938.79 attorney's fees "which represents 15% of [the Crosbys'] unpaid balance at the time that this matter was referred to [] counsel." Generally, the determination of reasonable attorney's fees begins with a determination of the reasonable hourly rate multiplied by the "hours reasonably expended." *Bivins v. Wrap It Up, Inc.,* 548 F.3d 1348, 1350 (11th Cir.2008); *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1303 (11th Cir.1988). When making this "lodestar" determination, the court may consider the twelve factors identified in *Pharmacia Corp. v. McGowan,* 915 So.2d 549, 552–53 (Ala. 2004) (quoting *Van Schaack v. AmSouth Bank, N.A.,* 530 So.2d 740, 749 (Ala.1988)); *see also Bivins,* 548 F.3d at 1350 (addressing the twelve factors from *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir.1974)). "The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins,* 548 F.3d at 1350 (internal citations and quotation omitted).

In support of its claim for attorney's fees, VMF has submitted the affidavit of VMF Portfolio Manager Brent Ridge. (Doc. 35-1). In his affidavit he states:

> 16.   In the event of a default, the Manufactured Home Retail Installment Contract provides that the buyer agrees to pay the Seller's expenses for "reasonable attorney's fees not to exceed 15% of Buyer's Unpaid Balance after referral to an attorney who is not a salaried employee of the Seller." In my best judgment and experience, including my experience with attorneys in matters of this nature within this industry, 15% of the buyer's unpaid balance is a reasonable attorney fee to be awarded to cover the efforts incurred in this case thus far and in future. Because the attorneys have had to respond to several motions that are not

routine in this type of case, there has been more legal work involved than would normally occur. Additional attorney work will be needed in completing the foreclosure of the collateral and pursuing any deficiency after the sale of the collateral.[3]

17.     At the time this case was referred to outside counsel who are not a salaried employee of [VMF], the outstanding balance on the loan was $66,258.61 .

However, VMF has not provided any evidence pertaining to the number of hours expended or hourly rates. Thus, the Court is without sufficient information to determine whether the amount of attorney's fees requested is reasonable. Though the installment contract provides a 15% cap, it does not follow that 15% of the buyer's unpaid balance is *per se* reasonable. The agreement states that the attorney's fees are "not to *exceed* 15% of Buyer's Unpaid Balance," not that attorney's fees shall equal 15% of buyer's unpaid balance. (emphasis added). *See Bank of the Ozarks v. Bass*, No. 1:13-CV-22 WLS, 2014 WL 2769025, at *3 (M.D. Ga. June 18, 2014)(Holding "But Plaintiff has failed to carry its burden of establishing the amount of attorney's fees. In support of its request for attorney's fees, Plaintiff points to the "COLLECTION COSTS AND ATTORNEY'S FEES" provision of the promissory note, which states: "I agree to pay all costs of collection ... if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee, not to exceed 15 percent of the principal and interest then owed, you incur with such attorney plus court costs (except where prohibited by law)." Plaintiff claims it is automatically owed 15 percent of the principal and interest because the Note sets that figure as a cap and [state law] provides that a percentage provision is valid and enforceable. Although [state law] states that specific percentage provisions are valid, the Parties' Note in this case does not provide for fees in a specific percentage. Instead, the Note requires the

---

[3] The manufactured home retail installment contract states: "In the event of default, Buyer also agrees to pay Seller's expenses for (a) reasonable attorney's fees not to exceed 15% of Buyer's Unpaid Balance after referral to an attorney who is not a salaried employee of the Seller (b) court costs and disbursements; and (c) costs of repossessing the Manufactured Home including the costs of storage, reconditioning, and resale." (Doc. 35-2 at 7).

borrower to repay fees *incurred,* not to exceed 15 percent. It would be superfluous to say fees shall 'not exceed' 15 percent if, in all cases, the fee is automatically 15 percent. Thus, the Court cannot simply award fees with a 'mathematical calculation.'").

VMF also seeks "that the Court tax the costs of this action against the Defendants" but do not point to any particular costs or provide evidence of additional costs requested. (Doc. 47 at 6). Parties seeking taxation of costs are directed to follow the proper procedures for doing so, as outlined in the Southern District of Alabama's Local Rules, the Federal Rules of Civil Procedure, and any other applicable law.

Accordingly, the Court **RESERVES RULING** on the matter of attorney's fees and costs. VMF is **ORDERED** to file, on or before **August 7, 2015**, a supplement to its motion addressing the deficiencies in its request for attorney's fees and costs.[4]

**C.    Conclusion**

VMF's motion to confirm the foreclosure sale is **GRANTED in part**. The sale is **CONFIRMED** and VMF is due a deficiency balance of **$508.11**. However, the Court **RESERVES RULING** with regard to VMF's motion for attorney's fees and costs. As outlined above, VMF is **ORDERED** to supplement its motion on or before **August 7, 2015**. The Court withholds entry of Final Judgment until these matters have been resolved.

**DONE** and **ORDERED** this **23rd** day of **July 2015**.

>  s / Kristi K. DuBose
>  KRISTI K. DuBOSE
>  UNITED STATES DISTRICT JUDGE

---

[4] In the event VMF does not supplement its motion, the Court will **DENY** the request for attorney's fees and costs.